## FITCH v. RICHARDSON.

### In re FITCH.

#### (Circuit Court of Appeals, First Circuit. May 23, 1906.)

#### No. 607.

**1. SECURED DEBT—RENEWAL OF LEASE BY CREDITOR.**

A creditor holding as security a lease running to his debtor, who on its expiration obtained its renewal to himself without the debtor's knowledge, holds the renewal merely as security, the same as the original lease.

**2. SAME—JURISDICTION OF COURT—JUDGMENT AGAINST CREDITOR FOR EXCESS OF SECURITY.**

A court of bankruptcy, on rejection of proof of a claim on the ground that the creditor held security therefor, is without jurisdiction to value the security and enter a decree against the creditor over his objection for its excess value over the debt, although he claimed the security as his own property.

D. D. Corcoran, for appellant.

Henry A. Richardson, pro se.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This appeal relates to the allowance of a proof of claim by a creditor against the estate of Nathan A. Fitch, bankrupt. As usual, there was a prima facie proof of the claim, followed by a petition by the trustee for a reconsideration thereof. The trustee's petition alleged that the creditor had held collateral for the debt, by which the debt had been paid in full. The proceedings show that the alleged collateral was a stall in the new Faneuil Hall Market, held under a lease from the city of Boston. The District Court found that the debt was fully covered by the lease referred to, from which finding the creditor appealed; and this forms the first proposition which we have to consider.

There is no question that the creditor at one time held as security a lease of the stall referred to. This lease expired at some time not stated, but before there was any avowed insolvency on the part of the bankrupt. The creditor testified that, at the time of its expiration—a time at which there was no default on the part of Nathan A. Fitch—he, that is, the creditor, "went round and got the lease" in his own name, "without consulting him." that is, the bankrupt. The creditor claims that this deprived the bankrupt of any interest that he might have had in the lease, but that, nevertheless, the bankrupt still owed him the whole of the original debt. He also testified, in substance, that, having made a renewal of the lease, he told the bankrupt he might

stay in the stall so long as he paid the rent, and that when the bankrupt no longer paid the rent he would eject him. It appeared that the bankrupt paid the rent. It also appeared that the stall had been occupied by the bankrupt for some 15 years prior to the time of the assignment of the lease to the creditor as security, under successive leases granted to him in accordance with a custom by which a tenant who had paid his rent, and who is otherwise satisfactory to the city, receives renewals. The creditor asserts acquiescence by the bankrupt in the creditor's obtaining the new lease from the city in his own name, and a further acquiescence in his retaining it as his own property, thus relieving it entirely from any apparent relation to his debt as security therefor. Aside from this claim of acquiescence, the case is clearly governed by the ordinary principles with reference to renewals of leases, and to other direct or indirect extensions of other rights, held in mortgage or as collateral security; a well-known illustration of which is Aberdeen Town Council v. Aberdeen University, 2 App. Cas. (1877) 544.

On fundamental principles of equity, there can be no question that the renewal by the creditor of the lease of the stall inured to the benefit of the debtor, subject to a liquidation of his debt, and that the new lease was held by the creditor merely as security for the claim offered in proof. Also, according to the settled rules of courts of equity, the fact that his debtor apparently acquiesced in a claim that the creditor had renewed the lease for his own sole benefit is of no effect. Especially is that true in the present case, where the creditor admits that he obtained the renewal behind the back of the debtor, and without consulting him. Even if he had consulted him, equity looks at the relative positions of creditor and debtor, and it holds that, in view of the fact that the debtor is, at least theoretically, more or less under compulsion, all dealings by a creditor with securities which he has received are regarded as involuntary on the part of the debtor, and as subject to the original relation in which they stood, unless a new and adequate consideration passes between the parties. In this case there was no such consideration, and therefore it is clear that the creditor must be regarded as holding the lease of the stall in question as security for his debt; and the debt, therefore, could be offered in proof only as one secured in whole or in part.

The other question on this record arises from the fact that the District Court not only found that the claim offered in proof was secured, but valued the security at $1,339 in excess of the claim, and entered judgment against the creditor for that amount, resting the judgment on the proposition that the creditor had appropriated the security to his own use, and also holding that, according to the rules of equity practice, the question with reference to the proof of the claim involved a determination of all other questions incidental thereto. But the judgment by which the District Court ordered the creditor to pay over the amount named was against an adverse claimant, and therefore was within the decision in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; and other decisions of that class, holding that a court sitting in bankruptcy has no jurisdiction over an

adverse claim without the consent of the parties; and it was not within Pirie v. Chicago Company, 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, where the order to return dividends received was purely an incident to the proof of a claim which had been rejected.

It is true that in bankruptcy proceedings questions of right are governed by the rules of chancery; but the practice of courts in bankruptcy with reference to topics like that before us is statutory. The nature of their powers with regard to matters to which this appeal relates is expressed by paragraph 6 of General Orders xxi (89 Fed. x, 32 C. C. A. xxiii), limiting proceedings with reference to a reconsideration of claims to the mere matter of expunging or diminishing them. This, of course, is subject to the right of the courts in bankruptcy, on a proper proceeding, to liquidate property found in the possession of the bankrupt, as provided by section 38, Act July 1, 1898, c. 541, 30 Stat. p. 555 [U. S. Comp. St. 1901, p. 3435], or as otherwise provided by law; but nothing anywhere gives them jurisdiction to enter a decree against a creditor for the excess value of property held as security in the manner and under the circumstances which this record brings before us.

The decree of the District Court is reversed, and the case is remanded to that court for proceedings in accordance with the opinion passed down this day, and the costs of appeal are awarded to the appellant.