## MORTON G. THALHIMER, Inc., v. FLORANCE.

### No. 3244.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1932.

Robert T. Barton, of Richmond, Va. (Christian & Barton, of Richmond, Va., on the brief), for appellant.

John P. Leary, of Richmond, Va. (Page & Leary, of Richmond, Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

Claude A. Browning was adjudicated a bankrupt on February 26, 1930, in the District Court of the United States for the Eastern District of Virginia upon his voluntary petition. Among the assets listed in his schedules were certain negotiable promissory notes of the approximate aggregate amount of $2,400, which, more than four months prior to the institution of the bankruptcy proceedings, he had deposited with Morton G. Thalhimer, Inc., a Virginia corporation, as collateral security for the payment of certain advances which he had made or might thereafter make in connection with a real estate business which he was conducting. A controversy arose between the corporation and the trustee in bankruptcy as to whether or not the corporation was entitled to retain the notes and apply the proceeds to a reduction of its claim against the bankrupt estate. The matter was brought to a head by a petition of the trustee, upon which the referee signed an order, requiring the corporation to show cause why the notes and such proceeds as the corporation had collected should not be delivered to the trustee. The corporation filed an answer setting out the circumstances under which it obtained possession of the notes, but it appeared specially and denied the jurisdiction of the bankruptcy court to try the issue raised, on the ground that the corporation held the notes as an adverse claimant without whose consent, as provided in section 23 of the Bankruptcy Act (11 USCA § 46), the court was without authority to proceed. The referee took the evidence of the witnesses, and, concluding that the court had jurisdiction, passed an order requiring the corporation to deliver to the trustee the notes, and to pay to him all sums collected. The matter then came before the District Court upon a petition for review, whereupon the District Judge approved and confirmed the findings of fact and conclusions of law of the referee. From this decree the corporation has appealed.

The rule of law governing such situation is clearly set out in Harrison, Trustee, v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 468, 70 L. Ed. 897, in which a trustee in bankruptcy sought to recover by summary proceeding certain money in the possession of a stranger to the proceeding, which she claimed as her individual property. The court said:

"It is well settled that a court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant; but resort must be had by the trustee to a plenary suit. * * * However, the court is not ousted of its jurisdiction by the mere assertion of an adverse claim; but, having the power in the first instance to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. And if found to be merely colorable the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial it must decline to determine the merits and dismiss the summary proceeding. * * *

"Without entering upon a discussion of various cases in the Circuit Courts of Appeals in which divergent views have been expressed as to the test to be applied in determining whether an adverse claim is substantial or merely colorable, we are of opinion that it is to be deemed of a substantial character when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' Board of Education v. Leary, 236 F. 521, 527, 149 C. C. A. 573, in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense. Compare Binderup v.

Pathe Exchange, 263 U. S. 291, 295, 44 S. Ct. 96, 68 L. Ed. 308.''

In conformity with this rule, the referee took the testimony of the president and vice president of the corporation, and the secretary of the latter. It showed that, for a number of years preceding the adjudication, the bankrupt had been engaged in buying and selling real estate, some of which it had been his practice to improve. He had been assisted from time to time in his financial operations by the corporation. About a year before bankruptcy, his need for money increased and he was given larger advances in proportion to the work done than had formerly been the custom. He was requested therefore by the corporation to give additional collateral as a condition of the continuance of the loans which he needed for his construction work. As a result he deposited sundry negotiable promissory notes with the corporation at divers times before the middle of 1929, with the understanding that the corporation should hold the notes as collateral security and apply the proceeds of such of them as should be collected to the payment of the indebtedness. Accordingly, the proceeds collected were applied to the reduction of his debts.

The indebtedness of the bankrupt to the corporation at the time of the trial below amounted to $3,584.47, consisting of an item of $643.27, growing out of a transaction with regard to a property on Williamsburg avenue in Richmond, Va., and an item of $2,-941.20, in connection with property on Kensington avenue in Henrico County, Va. The smaller sum did not represent an advance by the corporation for construction work undertaken by the bankrupt, but the larger amount, growing out of the Kensington avenue transaction, had its origin in moneys advanced by the corporation to enable the bankrupt to complete the construction of a building on the premises. The referee concluded from the evidence that the notes deposited with the corporation were intended to secure only the repayment to the corporation of advances which it might make in connection with construction projects, and were not intended to secure any other indebtedness. He also found that, although the Kensington avenue transaction originally involved the loan of money for the construction of a building on the premises, this indebtedness had been completely paid off and an indebtedness of another kind had been substituted before the trial took place. Hence he reached the conclusion that the corporation had no right, colorable or oth-erwise, to retain the notes and moneys in question.

We are unable, after careful consideration of the testimony, to sustain this conclusion. The evidence does not involve an issue of veracity, but merely a question as to the construction of the agreement between the parties. Without passing upon the merits of the matter, we cannot say that it is established beyond any reasonable controversy that the notes were deposited to secure only loans made for construction purposes. The indebtedness incurred by the bankrupt doubtless related for the most part to moneys loaned to enable him to prosecute his business of building, and the notes were deposited to secure the repayment of these loans. But the transactions between the parties included other loans and other services rendered by the corporation, as, for instance, the collection of money and the sale of property, by which commissions were earned. There was no written agreement governing the collateral deposit. Some of the testimony tended to show that the notes were held as collateral security for advances made on construction loans, but other statements were broad enough to show that the notes were deposited as additional collateral against the bankrupt's account with the corporation, as security for any deficit that might exist at any time. No witness was asked whether the collateral security was limited or confined to loans for the construction work; and none so testified.

There is also room for difference of opinion as to the nature of the indebtedness on the Kensington avenue property. The transaction arose in this wise: During the months of December, 1929, and January, 1930, Browning was engaged in erecting a structure upon this property and borrowed various sums amounting, in the aggregate, to $6,484.90, from the corporation to finance the work, agreeing to complete it. On December 20, 1929, the bankrupt executed and delivered to the corporation his notes for the principal sum of $7,500, and for the interest thereon at 6 per cent., together with a deed of trust or mortgage conveying the real estate, to secure the advances made and to be made. In the early part of January, the corporation sold the mortgage to a third party for its par value of $7,500, guaranteeing that the house would be finished free from liens. The corporation credited the purchase money on its books to the purchaser, apparently regarding him as a creditor, because of the unfinished condition of the house. The builder went into bankrupt-

cy on February 26, 1930. A number of mechanics' liens were filed against the property, and the corporation bought them in order to protect itself. The corporation also took back the mortgage notes from the purchaser. Later it purchased the property in the bankruptcy proceedings through a subsidiary company, and, after the mechanics' liens were paid, there remained of the proceeds of sale, applicable to the payment of the mortgage indebtedness, a balance of only $3,615.03; so that the corporation received $2,869.87 less than the amount it had advanced. The corporation then completed the property at an additional expense and gave a new mortgage for $7,500, to its purchaser.

The referee concluded that, by this series of transactions, the corporation had been reimbursed for its entire outlay of $6,484.90, which it had advanced for construction purposes, and that the collateral notes could not be retained by it to secure the indebtedness of the bankrupt to the corporation in its new form. But we think that the mere statement of facts indicates an open question of law as to which differences of opinion would be likely to arise, and the corporation's case would be the stronger if it should be held that the collateral was intended to secure indebtedness of all kinds. This question the corporation was entitled to litigate in the proper forum.

The referee held, as an additional reason for exercising jurisdiction, that the corporation had given its consent to a determination of the controversy by the bankruptcy court, as provided in section 23b of the Bankruptcy Act (11 USCA § 46 (b). This consent was implied, it was contended, when the corporation filed a proof of claim against the bankrupt estate with the referee in the sum of $3,585.47, representing the balance claimed by the corporation as due upon the Williamsburg and Kensington avenue transactions. The proof acknowledged that the claim was partly secured to the extent of unpaid promissory notes in the aggregate sum of $2,062.64, remaining in the creditor's possession as collateral. The only authority cited to support the proposition was In re Jackson Brick & Tile Co. (D. C.) 189 F. 636, 642; but, in that case, jurisdiction was based upon the fact that the property, against which a lien was asserted by a creditor who filed a proof of claim with the referee, was in the possession of the trustee of the bankrupt estate. The mere filing against a bankrupt estate of a claim partly secured by a lien upon property in the possession of the claimant does not signify his consent to a determination of his right to the security by summary proceeding in the bankruptcy court. Such an action does manifest a desire to share in the assets of the estate with respect to so much of the claim as is unsecured, and it assumes that the creditor's right to the security will be respected; but it does not evidence an intent to submit the title to the security, if denied, to the determination of the court. The bankruptcy court gets jurisdiction to determine the validity of a creditor's claim, not by reason of a consent implied in the filing of a proof of debt, but from sections 2 and 57 of the Bankruptcy Act itself (11 USCA §§ 11, 93), whereby it is vested with power and authority to allow or disallow a claim and to determine controversies in regard thereto. Lesser v. Gray, 236 U. S. 70, 35 S. Ct. 227, 59 L. Ed. 471. But section 23 of the same act denies the court jurisdiction of controversies between the trustees and adverse claimants concerning property, except by consent, unless the court would have had jurisdiction if bankruptcy had not occurred, and the controversies had been between the bankrupts and the adverse claimants. So it has been held that a court of bankruptcy, which rejects a proof of claim on the ground that the creditor holds sufficient security therefor, is without jurisdiction to value the security and enter a decree against the creditor over his objection for its excess value over the debt. Fitch v. Richardson (C. C. A.) 147 F. 197; see, also, Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; In re Peacock (C. C.) 178 F. 851; Straton v. New (C. C. A.) 49 F.(2d) 869.

The decree of the District Court is reversed.