In the Matter of INDUSTRIAL ASSO-
CIATES, INCORPORATED, Debtor.

No. 24877.

United States District Court
E. D. Pennsylvania.

Oct. 8, 1957.

that in any event the referee's findings of fact and conclusions of law are erroneous, and the order based thereon must accordingly be reversed.

Resisting the petition, the trustee in bankruptcy denies these contentions in all respects. He argues also that regardless of the foregoing, petitioner has consented to the summary adjudication by the referee by filing his proof of claim after the hearing.

The opinion and order of the referee sur turnover petition of trustee against Philadelphia National Bank commences with the following:

"Statement of Case

"The receiver in bankruptcy filed his petition with the Referee for a rule to show cause why the Philadelphia National Bank should not be directed to turn over to him forthwith the sum of $3,997.73, representing the balance on deposit to the credit of the debtor corporation.

"To this petition the Bank filed an answer, denying almost all the averments of the petition, and setting up as an affirmative defense the lack of summary jurisdiction in the bankruptcy court.

"At the hearing on the petition each side submitted one witness, the trustee in bankruptcy, G. Potter Darrow, and Daniel H. Ort, an employee of the Bank.

"Mr. Darrow's testimony was to the effect that he was appointed receiver on November 14th, 1956; ordered his bond; stopped at the Bank the next day about noon; talked to Buddy Mann, an officer of the Bank, of his appointment as receiver; was advised by Mr. Mann that although he did not handle the account he would take care of it for him; was handed three signature cards which he signed; was advised by Mr. Mann that he did not have to fill them out as long as the receiver gave him the cause number and the title of the account; attended a

Herman N. Silver, Philadelphia, Pa., for receiver.

David W. O'Brien, Philadelphia, Pa., for Philadelphia Nat. Bank.

LORD, District Judge.

This matter arises on the petition of the Philadelphia National Bank, respondent, for review of an order of the referee in bankruptcy. Petitioner (hereinafter referred to as "Bank") asks that the referee's order be set aside on the ground that the subject matter was not within the summary jurisdiction of a court of bankruptcy. The Bank further argues

discussion at the office of Mr. Mc-Manus, attorney for the bankrupt, that same afternoon [November 15, 1956], at which conference Mr. Ort and a Mr. Rafetta were present on behalf of the Bank; asked Mr. Mann to release several payroll checks which he had ordered stopped; attended a meeting in the Bank's office on the 16th, and as he was leaving the Bank at 5:00 P.M. was advised that he had no account, despite the fact that at the meeting that day he was advised there was between $2500.00 and $4000.00 in the account; this being the first notice he had that the Bank intended to set off the account against its indebtedness; offered in evidence a certificate of the Clerk of Court dated the 16th of November, 1956, showing that the receiver qualified by filing his bond on the 14th, which certificate he presented to the Bank on the 16th; advised Mr. Ort and Mr. Rafetta on the 15th of his appointment as receiver.

"Mr. Ort testified that on November 15th, 1956, the account had a balance of $4369.13; one check for $371.40 came through, leaving a balance of $3997.73 on November 16th; no deposits were made nor checks presented for payment by the receiver."

Thereafter the opinion sets out the basic principles and authorities applicable to the question of summary jurisdiction. Turning to the testimony, the referee interprets it as showing that the Bank in fact turned over the account in question to the receiver, and subsequently withdrew it from his control and custody. It follows, he adds, that there is no real question involved; that the funds are in the constructive control of the bankruptcy court; and that the claim of the Bank is merely colorable.

The challenged findings of fact restate that position, and the three conclusions of law accordingly are as follows:

"1. There is no real question of law involved.

"2. The Bankruptcy Court has summary jurisdiction of the Receiver and of the Respondent Bank, with power to adjudicate summarily the issues raised by Receiver's petition and Respondent's answer and affirmative defense.

"3. The Respondent has in its possession or under its control the sum of $3,997.13, which it holds in trust for G. Potter Darrow, Receiver, and must turn over or make available forthwith said sum for use by Receiver in his fiduciary capacity."

■■ Since those conclusions are the somewhat inevitable consequences of the findings of fact, it is necessary that the findings be examined. In that connection, it is recognized that it was unquestionably within the province of the bankruptcy court to determine the existence or nonexistence of the disputed facts at the outset—once the receiver had petitioned for the order to turn over the balance, and the Bank had by its answer challenged the summary jurisdiction of the bankruptcy court. The preliminary investigation to determine jurisdiction requires such initial inquiry into the facts. United States Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 1935, 80 F.2d 235, 240; cases collected 2 Collier on Bankruptcy 506 (14th ed. 1940). If the disputed property be found to be in the actual or constructive possession of the court, or the asserted adverse claim to be merely colorable or frivolous, the bankruptcy court has power to adjudicate summarily. Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97.

■ In the event that a bankruptcy court assumes summary jurisdiction in a case where the disputed property is not within its actual or constructive possession, or where the claim is in fact adverse, and not merely colorable or frivolous, the adverse claimant may have the order of the bankruptcy court set aside. That result is without prejudice and simply requires the trustee to resort thereafter to some form of plenary suit

in order to establish his claim. In re Veelock Mfg. Co., D.C.E.D.Pa.1938, 26 F.Supp. 110, 111, affirmed without opinion in Kelly v. Rieck, 3 Cir., 1939, 102 F.2d 993; 1 Collier on Bankruptcy 147–152 (14th ed. 1940).

Accordingly, if this court were convinced that the instant case is within the summary jurisdiction of a bankruptcy court, there would be no occasion to discuss the referee's findings of fact. Since, however, they are inextricably bound up with the question of jurisdiction they must be analyzed here, in order to determine whether the preliminary conclusion as to summary jurisdiction is justified by the evidence.

The second finding laid the foundation. Contrary to the petitioner's insistence that the receiver had not gone beyond starting the arrangements to *open* an account, it was found that the receiver on November 15, 1956,

"* * * upon oral representation of an official of the * * * Bank * * *, arranged * * * to *effect a transfer* of the moneys of the debtor on deposit with the Bank into an account in receiver's name."

(Emphasis supplied.)

The third finding, which virtually concluded the jurisdictional inquiry, is:

"3. Receiver in all respects, either on November 15th or 16th, 1956, completed the acts necessary to open his account with said debtor's moneys on deposit by delivering to the Bank his Receiver's certificate as evidence of his qualification."

The question for determination here reduces itself to whether the evidence warranted the jurisdictional findings of fact from which the conclusions resulted. The record of the entire proceedings has therefore been searched, but this court has been unable to find support in the testimony for the interpretation of the facts made by the learned referee. To the contrary, it appears from the testimony that the newly appointed receiver called at the Bank and merely *set on foot the procedures* necessary to effect the transfer. The bank officer to whom he talked, Mr. Mann, chosen by the receiver simply by virtue of past acquaintance, disclaimed familiarity with the debtor's account and merely undertook to set the machinery in motion to bring about the desired transfer. Nowhere in the record does it appear that any draft on the debtor's account was drawn, nor that any charge against the debtor's account or credit to a receiver's account by way of transfer was made. It is true that on the first day, November 14th, the receiver told Mr. Mann that as receiver it "was his practice to take over the account physically and stop payment on all checks." The receiver further testified that by telephone on the second day, November 15th:

"I talked to Mr. Mann and told him that I found several payroll checks were among those which I had ordered stopped payment on and asked him to release the payroll checks, that I would get in touch with him the following day, as soon as I got more familiar with it. * * *"

The referee's opinion recites the foregoing circumstance as one of several others, such as the giving of signature cards to the receiver, which placed the Bank in a position whereby it could not be heard to deny that it had transferred the account. He concluded accordingly that the Bank was ineligible to claim a set off on November 16th, the last of the three days in which the events in question took place.

The record, however, reveals the testimony of an officer of the Bank that no money was ever credited to the receiver's account, and that the only charge to the account of the debtor corporation during the three days in question was a check for $371.40, which is rather clearly a payroll item, coinciding with the foregoing references to the receiver's telephonic direction to release payroll checks.

The probative significance of the $371.40 charge is somewhat obscure. On the one hand it is claimed to be an assertion of dominion and control by the receiver.

On the Bank's side it is argued that the fact that the charge was made against the debtor's account, and that the receiver stated his wishes to the Bank, shows the fund to have been still in the hands of the Bank. The balance, it seems to this court, weighs in favor of the latter interpretation, for if the account had in fact then been standing to the credit of the receiver's account, having been transferred out of the debtor's account, there would have been no necessity to stop payment on checks drawn on the debtor's account, since there would have been no funds remaining in it. A reasonable interpretation of the circumstances is that the preliminary, oral stop payment request was made *pending* the transfer, and not otherwise.

■ The authority under which the Bank holds and claims the $3,997.83, representing the debtor corporation's balance, is Section 68 of the Bankruptcy Act (11 U.S.C.A. § 108) regarding setoffs and counterclaims, which reads in part:

. "a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the
' account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

It is the position of the Bank that it asserted its statutory set off at the earliest practicable moment. In this connection, it is clear from the authorities that there is no requirement that the claim of set-off be made immediately or, for that matter, within any specified time, so long as the creditor commits no acts between notice of bankruptcy and assertion of the claim which prejudice the rights of the receiver or trustee. New York County National Bank v. Massey, 1904, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380; In re Empire Flooring Co., D.C.W.D.Pa.1930, 43 F.2d 748; 4 Collier on Bankruptcy 734–736 (14th ed. 1942).

The record shows the following events to have taken place on November 16th, the third day here in question, being that on which the Bank claimed its set-off. A meeting was then held at the Bank offices between the receiver, representatives of the debtor, and the petitioning Bank. It was on that occasion that, for the first time, the receiver presented his certificate of appointment, issued as of that same day by the clerk of the United States District Court for the Eastern District of Pennsylvania, evidencing the receiver's appointment and qualification as such.

Uncontradicted testimony shows the upshot of that meeting to have been the Bank's decision that no further financing could be extended to the debtor, and a decision by those present that an arrangement with creditors could not be accomplished. At the close of that meeting, at about 5 p. m., representatives of the Bank then advised the receiver that the debtor's funds on deposit with the Bank were not available to the receiver, having been taken over by the Bank for application to the indebtedness (said to be $100,000) of the debtor to it.

■ The foregoing discussion by no means encompasses all disputed questions of fact. However, the petition before the court goes primarily to the absence of summary jurisdiction in the bankruptcy court. In granting that petition, this court therefore deals principally with the conflicting contentions bearing on this one crucial aspect. The receiver insists that his transactions with the petitioner subjected the fund to his control before the assertion of the set-off. The Bank claims that it has a bona fide adverse claim, and with this the court agrees. The question here is not which party is in the right, but whether a substantial controversy is presented, requiring plenary litigation with the procedural accompaniments of a full and complete hearing, before final disposition of the dispute. Shortridge v. Utah Savings & Trust Co., 10 Cir., 1930, 40 F.2d 328, 330. Accordingly, there is no occasion to pass on the petitioner's second or alternative argument that the referee's action in ordering the turnover was without foundation in law or fact.

The remaining question is whether, by filing proof of its $100,000 claim, the petitioner has consented to the exercise of summary jurisdiction by the bankruptcy court. One notes immediately that the petitioner objected to summary jurisdiction at the outset, and has not abandoned that position. It objected to summary jurisdiction in its answer to the original petition of the receiver for an order to show cause, and persisted in that objection at the hearing before the referee. When the referee found against the petitioner on this question, and ordered the turnover as sought by the trustee, the petitioning Bank filed in this court the instant petition for review of the referee's action, again objecting to jurisdiction. Not until some three months after filing this petition for review, and only a few days prior to the expiration of the period within which proofs of claim might be filed, did it file its proof of claim in these proceedings.

There is satisfactory authority for the simple proposition that the mere filing of a claim is not in itself a waiver of objections to jurisdiction or consent to the exercise of summary jurisdiction. Morton G. Thalhimer, Inc. v. Florance, 4 Cir., 1932, 58 F.2d 23; In re Bacon, 2 Cir., 1913, 210 F. 129.

Full discussion of the applicable principles is found in Inter-State National Bank of Kansas City v. Luther, 10 Cir., 1955, 221 F.2d 382. There a court, divided 3–2, found that a waiver of objections to summary jurisdiction had taken place, because the claimant had not objected to jurisdiction in the first place, and had participated in the proceedings and also filed its claim well before intimating that it had any objection to summary jurisdiction. Since two of the five judges dissented strongly even under those circumstances, it seems clear that the present petitioner's objections, raised at the very outset and urged at all opportunities thereafter, negative any suggestion of consent to summary jurisdiction.

For that matter, the entire theory of modern federal procedure is contrary to the technical waiver and consent here asserted. So long as the objection is clearly stated in the first instance, the defendant or respondent is permitted and even encouraged in all types of cases to answer to the merits, and present his defenses once he has obtained a ruling on his preliminary objections. See Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. The technicalities of special appearance, for instance, are outmoded.

Although it concerned objections to jurisdiction over the person, the following language of Judge Maris seems apt. In Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, 874, certiorari denied sub nom. Orange Theatre Corp. v. Brandt, 1944, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573, he wrote:

" * * * A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in. This, of course, is not to say that such keys must not be used promptly. * * *"

Having "used his keys promptly" by asserting and maintaining his objections to summary jurisdiction, petitioner has preserved his rights.

It is therefore ordered that the petition for review of the Philadelphia National Bank is granted, and the order of the referee in bankruptcy directing the Philadelphia National Bank to turn over or make available the sum of $3,997.13 for the use of G. Potter Darrow, receiver, is hereby reversed and set aside.