In re SUNSERI.

(District Court, W. D. Pennsylvania. February, 1907.)

BANKRUPTCY—JURISDICTION OF COURT—SUMMARY SEIZURE OF PROPERTY.

While a court of bankruptcy possesses the power to summarily seize property in the possession of third persons, but alleged to belong to the estate of a bankrupt, when necessary for the preservation of the estate, such power should be exercised only upon a petition by creditors definitely setting forth all the facts which show the bankrupt's ownership and the necessity for such action, and on the giving of a bond to protect the rights of the person in possession; and when such person sets up an adverse claim to the property which is not merely colorable the bankruptcy court is without jurisdiction to adjudicate the same over his objection, but must leave it to be determined in a plenary suit.

In Bankruptcy. On petition by receiver and answer thereto.

Eichenauer & Ache, for receiver.
E. L. Mattern, for Billante & Co.
Breck & Vaill, for bankrupt.

EWING, District Judge. On January 18, 1907, a creditors' petition praying for the adjudication of A. Sunseri as a bankrupt was filed, and on the same day a petition of various creditors praying for the appointment of a receiver was presented, whereupon Charles P. O'Connor was appointed receiver, with authority to take charge of, preserve, and dispose of the assets of said bankrupt, subject to the approval of the court. On January 31st the said receiver presented his petition, setting forth the foregoing facts, and alleging that the said Sunseri had entered into a conspiracy with P. Billante & Co., of Huntingdon, Pa., to defraud the creditors of said Sunseri, and that in pursuance of said conspiracy large quantities of goods were shipped by Sunseri to P. Billante & Co., at Punxsutawney, Pa., where they had a store, and that some of the said goods were transferred and shipped by Billante from there to their store at Huntingdon, and that some goods purchased by Sunseri he had shipped direct to Billante & Co., and that these goods so disposed of by Sunseri to Billante & Co., constituted a large portion of his assets, and that the conduct of these parties was for the purpose of hindering, delaying, and defrauding the creditors of said Sunseri, and praying for an order to seize said goods in the hands of P. Billante & Co., in order that they might be preserved to the bankrupt's estate. Said petition further alleged that P. Billante & Co., were financially irresponsible, and that the identity of the members of the firm had not been established and was unknown in their locality. On the same day the prayer of that petition was granted, and the said O'Connor directed to take into custody, and hold subject to the further order of this court, the merchandise transferred

to P. Billante & Co., at Punxsutawney and at Huntingdon, and the said P. Billante & Co., were directed to propound their claim within 10 days after service of said order. Pursuant to said order the receiver took charge of the stores of the said Billante & Co., at Huntingdon and Punxsutawney.

On February 5th Billante & Co., by Philip Billante, one of the partners, filed an answer to the receiver's petition in the nature of a counter petition, setting forth that they had no knowledge whatever of the financial condition of Sunseri, and never entered into any conspiracy with him, but that the goods so shipped by Sunseri to them were purchased by them in the ordinary course of business, for the purpose of conducting their stores at Huntingdon and Punxsutawney, the former of which they opened about the 1st of April, 1906, and the latter apparently some time subsequent, and that for all of said merchandise the prices paid were full and adequate; that all of said merchandise had been paid for, except one bill for a shipment in January, 1907, amounting to about $40.75, against which they have a good defense for shortage and damaged goods; and that said bill, together with a bill of January 7, 1907, of $140, had been placed by Sunseri in the hands of an attorney for collection from them, payment of which they refused, as to the $40 for the reason aforesaid, and as to the $140 for the reason it was paid for in cash and they hold a receipt therefor, which is attached to their said answer. And the said respondents allege that the order of this court was without authority for the seizure of their property without notice, process, or suit; that it was beyond the jurisdiction of this court to seize any goods outside its territorial limits (the said town of Huntingdon being in the Middle district of Pennsylvania); and that for the reasons above stated, as to their claiming this property adversely and with more than colorable title, this court is without jurisdiction to determine the title to it in this summary manner.

Upon this petition and answer the case was argued by counsel, without any testimony having been taken, and upon the facts as set forth in said petition and answer. It will be noted the answer does not deny the transfer of the goods from the alleged bankrupt to Billante & Co., but does deny explicitly any knowledge of Sunseri's insolvency at the time, any conspiracy with Sunseri, any object in the purchase of said goods other than for the proper and ordinary conduct of their business, and even any indebtedness therefor to said Sunseri beyond the controverted claims aforesaid. The petition of the receiver upon which this order was granted gives no facts for the allegation of conspiracy and intent to hinder, delay, and defraud creditors, beyond the shipments to Billante & Co. from time to time during the few months preceding the filing of the petition in bankruptcy, and facts in regard to the extent of the purchases and sales made by Sunseri during the same period, as shown by his books now in the hands of the receiver. As the case now stands, it does not seem necessary to dispose of the question of extraterritorial jurisdiction, or the question of the authority of the court to summarily seize property alleged to belong to the bankrupt in the hands of third persons. When necessary

for the preservation of the estate of the bankrupt and the security of the creditors, the latter authority can hardly be questioned, under the various provisions of the bankrupt act having that object in view; but the manner and practice regarding such seizures, as pursued in this case, may very well be called into question. I do not think the court should authorize such seizure in any case, except upon a petition very clearly and definitely setting forth all the facts, not merely suspicions, and after exacting proper security to protect the rights of the third parties in whose hands the goods are alleged to be. Such petition should be presented by the creditors, rather than by any temporary receiver, and they should be required to give the bond aforesaid before such seizure should be authorized.

When property alleged to have been disposed of by the bankrupt in fraud of his creditors is in the hands of third parties, and a seizure thereof properly made under authority of the court, if such third parties set up an adverse claim to said property, which is more than merely colorable, and said parties are not merely the agent or representative of the bankrupt, the court can proceed no further than the ascertainment of these facts, but must relegate the parties to some proper plenary action. It will be seen, from the statements contained in the petition and answer, that the claim of Billante & Co. to the goods in question is more than merely colorable, and that they are claiming in their own right, and are not in any respect holding said property as agents or representatives of Sunseri. It therefore follows that this court has no authority to proceed further in the matter, or summarily dispose of the question of title, no matter how fraudulent the transaction between Sunseri and Billante & Co. may eventually prove to have been, but that said Billante & Co. are entitled to have their title to said goods determined in an appropriate plenary action. In re Teschmacher & Mrazay (D. C.) 11 Am. Bankr. Rep. 547, 127 Fed. 728; In re Davis, Taylor & Co. (D. C.) 16 Am. Bankr. Rep. 486, 144 Fed. 285; Louisville Trust Co. v. Comingor, 184 U. S. 18, 7 Am. Bankr. Rep. 421, 22 Sup. Ct. 293, 46 L. Ed. 413.

Moreover, it appears that the receiver exceeded his authority when he took possession of all the goods of Billante & Co. in their respective stores, regardless of the sources from which they obtained them. It may be added that in all such proceedings, unless the property is of an exceedingly perishable nature, or the circumstances of the case particularly urgent, it would be better, before any order for seizure were granted, to give the party in whose hands the property is alleged to be prior notice and an opportunity to be heard on a rule to show cause.

The claim of the receiver in his petition that the disposition of this property was in violation of the provisions of the act of assembly of Pennsylvania of March 28, 1905, was abandoned on the argument.

Should the creditors of Sunseri, after further examination, be satisfied that they are able to show such a transaction between Sunseri and Billante & Co. regarding these goods as to make the custody of Billante & Co. merely that of agents of Sunseri, or to show in them nothing more than a merely colorable title, they can present their pe-

tition to court for another order, and for that purpose, and for the reasons above given, the order of January 31st last will be vacated, without prejudice. But the creditors must understand that in any event they would be required, before the grant of any order by the court, to give adequate bond to protect the rights of said Billante & Co., in case it should be found that the proceeding was not well founded.

Therefore it is ordered and directed that the order of seizure of January 31, 1907, be vacated, and the custody of the property in question restored to P. Billante & Co., but without prejudice.