LE MASTER v. SPENCER.

(Circuit Court of Appeals, Eighth Circuit. January 18, 1913.)

No. 3,532.

1. BANKRUPTCY (§ 116*)—RECEIVERS—RIGHTS AND POWERS—JURISDICTION OF DISTRICT COURT.

A marshal appointed to take charge of the property of an alleged bankrupt under Bankr. Act July 1, 1898, c. 541, § 2 (3), 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421), has the right, and it is his duty, to seize and hold property which there is reason to believe belongs to the estate of the bankrupt, although it is in the possession of a third person who claims ownership, and the District Court has jurisdiction to determine the title thereto.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

2. BANKRUPTCY (§ 116*)—ADVERSE CLAIM—JURISDICTION OF BANKRUPTCY COURT—CONSENT.

An adverse claimant of property in the possession of a marshal as receiver in bankruptcy who files a petition for its recovery in the bankruptcy court consents to the jurisdiction of such court to summarily determine his rights.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

3. BANKRUPTCY (§ 107*)—RECEIVERS—SEIZURE OF PROPERTY.

That property was unlawfully taken from one in possession by state authorities through an unreasonable search and seizure affords no reason why it may not be lawfully seized while in possession of such authorities by a marshal as receiver in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 149, 151; Dec. Dig. § 107.*]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the D. F. Le Master Brokerage Company, bankrupt; Fermor J. Spencer, trustee. From an order of the District Court, D. F. Le Master appeals. Affirmed.

Thomas M. Morrow, of Denver, Colo., for appellant.

Edward C. Stimson, of Denver, Colo. (James A. Marsh and Page M. Brereton, both of Denver, Colo., on the brief), for appellee.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

SMITH, Circuit Judge. The D. F. Le Master Brokerage Company claims to have been established in 1903. It was incorporated in January or February, 1908. It carried on business at Denver. E. L. Le Master was president, Mrs. Clara Josephine Le Master was vice president, and David F. Le Master was secretary and treasurer, and these three constituted the board of directors. Early in the spring of 1910 Edward L. Le Master, being sick, tendered his resignation as president, but no action was taken upon it. David F. Le Master and Clara Josephine Le Master were husband and wife, and thereafter had sole charge of the business.

David F. Le Master was general manager. Upon the letter head of the company it was stated that their capital stock was $20,000; that they were merchandise brokers, and made a specialty of fruits and produce. On June 6, 1910, they wrote the Mulvane Mill & Elevator that they believed themselves worth $30,000. August 24, 1910, David F. Le Master was arrested by the sheriff of the city and county of Denver under a warrant issued by the clerk of the state district court charged with larceny and obtaining money by means of the confidence game. Upon being taken to the jail, he was told to place what property he had upon the desk. He then deposited six silver dollars, four quarters, one nickel, and three pennies, three diamond rings, one ring having a red setting, a diamond stud and horseshoe scarf pin set with diamonds, a gold watch, a pair of diamond set cuff buttons, and a pair of gold plated cuff buttons. Upon being asked if that was all he said, "Just wait a minute, let's talk this over." Upon being informed he would be searched, he went behind the desk, opened his trousers, and, after some difficulty, extracted from within them a wallet containing eight one hundred dollar bills, two fifty-dollar bills, and forty-five ten-dollar bills. He also turned over to the sheriff a Port Arthur Route railroad ticket, one receipt from Will A. Collins for "Pride of the Valley Flour," one duebill from A. M. Earhart, and other property not necessary to mention. He stated to the officers that all the property belonged to his wife. The same day the Phillipsburg Mill & Elevator Company, the Buhlar Mill & Elevator Company, and the Haven Milling Company prepared a petition in involuntary bankruptcy against the D. F. Le Master Brokerage Company, alleging that the Brokerage Company owed the Phillipsburg Mill & Elevator Company for flour $1,715, the Buhlar Mill & Elevator Company for flour $1,747.20, the Haven Milling Company for flour $1,128. This petition was filed August 25th, and was ac-

companied with an application also executed on the 24th by all three of the petitioners for a special warrant to the marshal.

Clause 3 of section 2 of the Bankruptcy Act provides that the courts of bankruptcy are hereby vested with jurisdiction to "(3) appoint receivers or the marshals, upon application of parties in interest, in case the court should find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified."

The following appears in section 3, subdiv. "e":

"(e) Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt, and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same, prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties who shall reside within the jurisdiction of said court, to be approved by the court or a judge thereof, in such sum as the court shall direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, all costs, expenses, and damages occasioned by such seizure, taking, and detention of the property of the alleged bankrupt."

A warrant was issued and the property seized in the custody of the sheriff. September 12, 1910, the D. F. Le Master Brokerage Company was adjudged a bankrupt, and Fermor J. Spencer was subsequently duly appointed and qualified as trustee. On October 10th David F. Le Master filed a petition alleging that none of said money, goods, or chattels, except the railroad ticket, belonged to or was the property of the D. F. Le Master Brokerage Company; that the same were his and never had at any time been owned by the D. F. Le Master Brokerage Company; and that such company had never had at any time any right, title, or interest in or to any of said property, and asked an order that said property be turned over to him, but he did not specially question the jurisdiction of the court. October 21, 1910, Fermor J. Spencer, trustee, filed his answer, alleging that said property belonged to said D. F. Le Master Brokerage Company, and that he was now entitled to the same as held by the marshal.

The case was heard October 21, 1910, four witnesses being examined for the claimant and three for the trustee, and on October 26th the court held that all the money, the horseshoe scarf pin, the diamond cuff buttons, one gentleman's solitaire diamond tooth setting ring, one receipt from Will A. Collins for "Pride of the Valley Flour," one duebill from A. M. Earhart, and the Port Arthur Route railroad ticket, were the property of the bankrupt, and ordered the marshal to turn them over to the trustee, and directed the balance of the property turned over to David F. Le Master, and he appeals.

Le Master testified that about the 1st of August he received $246 and some cents from F. W. Woodrow, a student of a business college at Ashland, Or., which had been owed to him since in February, 1910; that early in August he received $579.15 from Walt James, who had been owing him for nearly five years; that at the same time Warrier Grayson and Alfred Brown paid him $516.50 upon a note

they had been owing for better than four years. He could not tell where they lived, except he thought they were farmers living near Muskogee. The cash book showed a payment to him in July, 1910, of $3,900 for alleged back salary and two payments of over $1,000 inside of 30 days for alleged traveling expenses, one of the payments on an impossible date—June 31st. He testified he purchased the diamond horseshoe and diamond cuff buttons with his own money for $62.50 of a jeweler on the north side of Larimer street between Seventeenth and Eighteenth streets during the summer of 1910, but could not give the name of the man he purchased of, and that he purchased the diamond ring about the 1st of July, 1910, of a Jew at Raton, N. M., and paid $115 for it, but could not give his name. He testified before Judge Harrison that there might be about a couple of hundred dollars of the money taken from him that belonged to the D. F. Le Master Brokerage Company, but claims he subsequently found out otherwise. Real estate carried on the books of the D. F. Le Master Brokerage Company at about $27,000, and which must have constituted most of the $30,000 referred to in the letter to the Mulvane Mill & Elevator, was sold on July 16, 1910, for $1,800. He further testified that the corporation first banked at the Colorado National and changed to the Federal State Savings Bank in December, 1909, but that he ceased putting all money into the bank in May and from that time on kept the money in his personal custody in the safe in the office. It must be borne in mind that money and other property in his personal custody as secretary, treasurer, and general manager of the D. F. Le Master Brokerage Company passed to the trustee upon his appointment. It is claimed by appellant that the bankruptcy court has no jurisdiction over a suit involving the title to property in possession of a third party holding the same adversely to the bankrupt, and that the trustee must be remitted to bring a separate suit for its recovery. This involves two questions: First. Did the federal court have jurisdiction without his consent? Second. Did he consent?

[1] Section 23, subdiv. "b," Bankr. Act July 1, 1898, c. 541, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3431), as amended by Act June 25, 1910, c. 412, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1499), provides:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision 'b,' and section sixty-seven, subdivision 'e.' "

The third clause of the second section of the Bankruptcy Act of 1867 expressly gave to the Circuit and District Courts jurisdiction of such suits by or against the trustee (Eyster v. Gaff et al., 91 U. S. 521, 23 L. Ed. 403), and the conferring of such exclusive jurisdiction upon the federal courts in the excepted cases in subdivision b of section 23 of the present law is valid (In re Wood and Henderson, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046). It is therefore not

beyond the power of Congress to give the federal court jurisdiction of such suits, but the Supreme Court has held that, in fact, no such general jurisdiction was given to the District Court by the present bankruptcy law, basing its opinion largely upon subdivision "b" of section 23 of the act heretofore quoted. Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Mitchell v. McClure, 178 U. S. 539, 20 Sup. Ct. 1000, 44 L. Ed. 1182; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Louisville Trust Company v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, and Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620. This case arose under a seizure by the marshal under sections 2 and 3 of the Bankruptcy Act, and the question at once arises, Are such cases governed by the authorities cited?

In Doyle v. Sharpe, 74 N. Y. 154, where a similar seizure had been made under the act of 1867, it appeared that the bankrupts, Legrave and Otis, authorized their shipping clerk and salesman to dispose of certain goods, and pay themselves from the proceeds. They sold them to Landers and delivered to him the bill of lading at 9 a. m., May 30th. Not until 11 a. m. of the same day was a petition even filed in bankruptcy. Subsequently Landers sold the goods to Doyle. The Court of Appeals of New York start their opinion with the statement that:

"The sale of the goods to the plaintiff's assignor Landers was complete and the transfer of the same was made before the proceedings in bankruptcy were instituted against Legrave & Co."

The marshal was sued in the state court, which under that act had concurrent jurisdiction with the federal court, and it was held by the Court of Appeals that the law did not authorize the marshal to take possession of the goods of the bankrupt in possession of third persons claiming title thereto. The Supreme Court of the United States reversed this holding. Sharpe v. Doyle, 102 U. S. 686, 26 L. Ed. 277, and followed that holding in Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984. The question came before the Supreme Court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, as to whether the rule was the same under the act of 1898, and the court said:

"Bankr. Act March 2, 1867, c. 176, § 40, provided that upon the filing of a petition for an adjudication of involuntary bankruptcy, if probable cause should appear for believing that the debtor was about to remove or conceal, or to make any fraudulent conveyance of his property, the court might issue a warrant to the marshal commanding him to 'forthwith take possession provisionally of all the property and effects of the debtor, and safely keep the same until the further order of the court.' 14 Stat. 536; Rev. Stat. § 5024. It was held by the Court of Appeals of New York that this did not authorize the marshal to take possession of the goods of the bankrupt in possession of third persons claiming title thereto. Doyle v. Sharpe, 74 N. Y. 154. But that decision was overruled by this court, and Mr. Justice Miller in delivering its opinion said: 'The act of Congress was designed to secure the possession of the property of the bankrupt, so that it might be administered under the proceedings in the bankrupt court. Between the first steps initiating proceedings in the bankrupt court and the appointment of the assignee a considerable time often passes. During that time the property of the bankrupt, especially in a case commenced by creditors, may be surreptitiously conveyed

beyond the reach of the court or of the assignee, to whose possession it should come when appointed. If the bankrupt does not voluntarily aid the court, or is inclined to defeat the proceedings, he can, with the aid of friends or irresponsible persons, sell his movable property and put the money in his pocket, or secrete his goods or remove them beyond the reach of his assignee or the process of the court, and defy the law. The evidence in this case shows the manner in which this can be done. It was the purpose of the act of Congress to prevent this evil. It therefore provides that, as soon as the petition in bankruptcy is filed, the court may issue to the marshal a provisional warrant directing him to take possession of the property and effects of the bankrupt and hold them subject to the further order of the court. To have limited this right or duty of seizure to such property as he might find in the actual possession of the bankrupt would have manifestly defeated in many instances the purposes of the writ. There is therefore no such limitation expressed or implied. As in the writ of attachment, or the ordinary execution on a judgment for the recovery of money, the officer is authorized to seize the property of the defendant, wherever found; so here it is made his duty to take into his possession the property of the bankrupt wherever he may find it. It is made his duty to collect and hold possession until the assignee is appointed or the property is released by some order of the court, and he would ill perform that duty if he should accept the statement of every man in whose custody he found the property which he believed would belong to the assignee, when appointed, as a sufficient reason for failing to take possession of it.' Sharpe v. Doyle, 102 U. S. 686, 689, 690 [26 L. Ed. 277]. A like decision was made in Feibelman v. Packard, 109 U. S. 421 [3 Sup. Ct. 289, 27 L. Ed. 984]. These considerations are equally applicable to an application, after the adjudication in bankruptcy and before the qualification of a trustee, for an appointment of the marshal, under clause 3 of section 2 of the Bankrupt Act of 1898, to take charge of 'the property' of the bankrupt 'after the filing of the petition and until it is dismissed or the trustee qualified.' It is true that under this provision the appointment is only to be made 'in case the court shall find it absolutely necessary for the preservation of the estates.' But that condition of things is shown in the present case by the allegation of the application, and the finding of the court of bankruptcy, that it was necessary to the interest of the creditors of the bankrupt to take immediate possession of his property. In the opinion in Bardes v. Hawarden Bank, 178 U. S. 524, 538 [20 Sup. Ct. 1000, 1006 (44 L. Ed. 1175)], it was indeed said: 'The powers conferred on the courts of bankruptcy by clause 3 of section 2, and by section 69, after the filing of a petition in bankruptcy, and in case it is necessary for the preservation of property of the bankrupt, to authorize receivers or the marshals to take charge of it until a trustee is appointed, can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant, and have no bearing upon the question in what courts the trustee may sue him.' But the remark, 'can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant,' was an inadvertence, and upon a question not arising in the case then before the court, which related exclusively to jurisdiction of a suit by the trustee after his appointment."

We are fully aware that in Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, in which the basic question was "whether in a case in which the original court of bankruptcy could act summarily another court of bankruptcy, sitting in another district, can do so in aid of the court of original jurisdiction," Mr. Chief Justice Fuller said:

"There are two classes of cases arising under the act of 1898 and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based on any transfer prior to the bankruptcy, but where the property is in

the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim of title can be tried and adjudicated. In the latter class it is not necessary to bring a plenary suit, but the bankruptcy court may act summarily, and may make an order in a summary proceeding for the delivery of the property to the trustee, without the formality of a formal litigation. The former class falls within the ruling in the case of Bardes v. Hawarden Bank, 178 U. S. 524 [20 Sup. Ct. 1000, 44 L. Ed. 1175], and in the case of Jaquith v. Rowley, 188 U. S. 620 [23 Sup. Ct. 369, 47 L. Ed. 620], which hold that such a suit can be brought only in a court which would have had jurisdiction of a suit by the bankrupt against the adverse claimant, except where the defendant consents to be sued elsewhere. In the latter class of cases a plenary suit is not necessary, but the case falls within the rule laid down in Bryan v. Bernheimer, 181 U. S. 188 [21 Sup. Ct. 557, 45 L. Ed. 814], and Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405], which held that the bankruptcy court could act summarily. The question was not discussed as to whether a court other than the court of adjudication could exercise this summary jurisdiction."

It must be borne in mind, however, that the question of the power of the marshal was in no wise involved in that case, and this statement, as said by the court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, was "upon a question not arising in the case then before the court." In Sharpe v. Doyle, 102 U. S. 686, 26 L. Ed. 277, the Supreme Court had reversed the Court of Appeals of New York for holding that, when the sale of the goods "was complete and the transfer of the same was made before the proceedings in bankruptcy were instituted," a levy could not be made by the marshal, and it followed its holding in that case under the Act of 1898 in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814.

Assuming that a plenary suit was necessary, the District Court has a summary jurisdiction, and in a proper case has jurisdiction of a plenary suit, and the Supreme Court has repeatedly held that when under authority of the statute property is seized by receivers or the marshals, and thus comes into the lawful custody of the court, it has not only jurisdiction, but exclusive jurisdiction to determine the questions of title. Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Murphy v. Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327. The bankruptcy court is ordinarily a court of equity, and no objections were made, and no exceptions were taken to the method of trial. The marshal had the right, and it was his duty, to seize the property in question, and, if after such seizure the court must turn back the property to the third person claiming it without reference to the evidence, then "the purpose of Congress to prevent this evil is itself defeated." See Clay v. Waters, 178 Fed. 385, 392, 101 C. C. A. 645, 21 Ann. Cas. 897, and In re Franklin Suit & Skirt Co. (D. C.) 197 Fed. 591, 600.

[2] If it should be assumed that the law is as contended by appellant still, it must be borne in mind that the court in Hicks v. Knost, 178 U. S. 541, 20 Sup. Ct. 1006, 44 L. Ed. 1183, said:

"The District Court has such jurisdiction by the consent of the proposed defendant, but not otherwise."

In this case there was no necessity for the marshal to bring suit. He had lawful possession of the property. It is worthy of notice that while Act March 2, 1867, c. 176, 14 Stat. 517, provided that the Circuit and District Courts should have concurrent jurisdiction of suits by or against the assignee the present bankruptcy law by its terms has reference only to suits by the trustee and not to suits against him. If it should be granted, however, that the statute applies to cases like the present at all, did Le Master consent to the jurisdiction of the District Court? He filed a petition in the United States District Court, and this in the absence of some repudiation of the jurisdiction of the court was itself a consent. If the court had ordered the property turned over to him and a subsequent suit had been brought to recover it by the trustee, what is there in this petition to preclude Le Master from claiming that the entire matter was res adjudicata?

It is true that D. F. Le Master could not have brought replevin to recover the property in a state court. White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183. But it does not follow that he could not have maintained a suit for damages against the marshal. Appellant cites In re Sunseri, 156 Fed. 103, but in that case the claimants pleaded:

"That it was beyond the jurisdiction of this court to seize any goods outside its territorial limits (the said town of Huntingdon being in the middle district of Pennsylvania); and that for the reasons above stated, as to their claiming this property adversely and with more than colorable title, this court is without jurisdiction to determine the title to it in this summary manner."

Le Master not only consented that the federal court exercise jurisdiction in this matter, but asked it so to do. It did so, and the statement of the evidence shows the decision of the court was fully sustained.

[3] It is contended that there was a violation of the law with reference to unreasonable searches and seizures. If there has been such a violation of the Constitution or laws of Colorado, no basis is furnished in this suit for action by the federal courts, and there is no claim that the provisions of the fourth amendment of the Constitution of the United States have been violated. The fourth amendment is a limitation upon the powers of the United States, and not upon a state. Jones v. League, 18 How. 76, 15 L. Ed. 263. "That the first ten articles of amendment were not intended to limit the powers of the state governments in respect to their own people but to operate on the national government alone, was decided more than a half century ago and that decision has been steadily adhered to since." Spies v. Illinois, 123 U. S. 131, 166, 8 Sup. Ct. 22, 24 (31 L. Ed. 80).

This being true, if the state authorities took tangible property from Le Master by an unreasonable search, that is no reason why it could not be lawfully seized by the United States under a warrant to the marshal. Bacon v. United States, 97 Fed. 35, 38 C. C. A. 37.

The decree of the District Court was correct, and is affirmed.

ADAMS, Circuit Judge (concurring). I think this record presents a clear case of consent to the summary jurisdiction exercised by the

trial court. Le Master invoked the jurisdiction by a formal petition, submitted his proof to the court, and never complained of the exercise of the jurisdiction so invoked until the decision adverse to him was rendered. The court took him at his word, and proceeded to adjudicate his rights to the property in question, and this must end the matter so far as jurisdiction is concerned; and, as there is no other serious question in the case, I concur in the affirmance of the decree.