WRIGHT v. HARRIS et al.

In re LUXURY FRUIT CO.

(District Court, S. D. Georgia, W. D.   April 2, 1915.)

1. MORTGAGES ☜360—FORECLOSURE UNDER POWER OF SALE—VALIDITY.

A lessee of land of a corporation, which was indebted to the lessee, agreed to carry the indebtedness for the full term of the lease, except as reduced by the rentals.  In evidence of the indebtedness the corporation executed notes to him, and executed a deed to the land to secure the notes.  Before the expiration of the lease a dispute arose as to the amount still due the lessee, and correspondence ensued between the lessee and the stockholders living in another state, and their attorney in an adjoining county, with whom a sufficient sum to pay the debt had been placed by the stockholders to the lessee's knowledge.  The lessee, without intimating to the stockholders or the attorney that he intended to take such action, procured a bank to which he had assigned the notes as collateral security to advertise the land for sale under the power of sale in the security deed, prepared the advertisement himself, employed an attorney ostensibly for the bank, arranged with the sheriff to conduct the sale, and procured the clerk of the court to make a bid to create the appearance of genuine bidding, promising that he would raise the bid, which he did; the land being struck off to him.  The lease expired March 8th, the sale was had March 16th, and the first advertisement was published February 19th, though the power of sale required the sale to be advertised once a week for four weeks prior to the sale.  It was advertised that the sale would be made subject to a prior incumbrance, but the fee simple was ostensibly sold.  *Held*, that the sale was void under Civ. Code Ga. 1910, § 4620, providing that powers of sale in deeds of trust, mortgages, and other instruments are to be strictly construed and must be fairly exercised, especially in view of sections 3697, 3698, providing that a tenant must deliver possession at the expiration of his term, and that a tenant cannot dispute his landlord's title, nor attorn to another claimant while in possession.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1075–1077; Dec. Dig. ☜360.]

2. MORTGAGES ☜356—FORECLOSURE UNDER POWER OF SALE—VALIDITY.

Civ. Code Ga. 1910, § 6063, providing that where the law requires citations, notices, or advertisements, by ordinaries, clerks, executors, trustees, etc., or others, to be published for four weeks, or once a week for each of the four weeks, immediately preceding the day when the sale is to take place, applies, under the rule of ejusdem generis, to persons of like character to the official persons named, but does not apply to a creditor holding a deed as security for a debt with a power of sale.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1063–1067; Dec. Dig. ☜356.]

3. MORTGAGES ☜356—FORECLOSURE UNDER POWER OF SALE—VALIDITY.

An advertisement of a sale under a power of sale in a deed given to secure a debt was premature, and the subsequent sale was void, where

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the required publication was commenced before the secured debt was due, though the sale was made after maturity of the debt.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1063–1067; Dec. Dig. ☜356.]

**4. MORTGAGES ☜335—FORECLOSURE UNDER POWER OF SALE—DEFAULT AS CONDITION PRECEDENT.**

A mortgagee cannot sell under a power of sale, so as to pass title even to a bona fide purchaser, where there is no default.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1019–1023; Dec. Dig. ☜335.]

**5. MORTGAGES ☜372 — FORECLOSURE UNDER POWER OF SALE — BONA FIDE PURCHASERS.**

Where H., holding a deed as security for a debt, sold the land under a power of sale, had it struck off to himself, approached B., a money lender, and told him that he had bought him a farm, and B., being satisfied with the transaction, let H. have the money and took a deed to the land, executing a title bond to B., B. was put upon inquiry and chargeable with knowledge of facts invalidating the sale, by the sudden and unexpected communication from H., and also by reason of the fact that H. acted as his agent, within Civ. Code Ga. 1910, § 3599, providing that notice to an agent of any matter connected with his agency is notice to the principal.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1102, 1103, 1105–1117; Dec. Dig. ☜372.]

**6. MORTGAGES ☜372 — FORECLOSURE UNDER POWER OF SALE — BONA FIDE PURCHASERS.**

If B. could be regarded as a bona fide purchaser without notice, H. having been the perpetrator of the wrong invalidating the sale, his interest under the title bond equitably vested in the mortgagor, who was entitled to pay B. and acquire H.'s interest.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1102, 1103, 1105–1117; Dec. Dig. ☜372.]

**7. BANKRUPTCY ☜211—POSSESSION OF PROPERTY—CONFLICTING JURISDICTION.**

On the appointment of a referee in bankruptcy for a corporation, the state superior court, which had appointed a receiver under an insolvency trader's bill, on its own motion ordered such receiver to turn over all assets, including a farm, to the receiver in bankruptcy. The receiver in bankruptcy, who was subsequently elected trustee, took possession, issued receiver's certificates in order to operate the farm, and managed the farm so well that a large sum had been produced, from which the certificates had been paid. Another crop was growing, the value of which might be jeopardized by neglect or change of management. The state Supreme Court reversed the order of the superior court, which, in obedience to the Supreme Court, directed its receiver to apply for possession of the farm. Such receiver was the ally of one of the creditors procuring his appointment, and the application was made in his interest. The creditor in question, while in possession of the land as lessee of the corporation, had wrongfully foreclosed a security deed held by him, concealing the fact of the foreclosure from the mortgagor, which was prepared to pay the debt, and purchased the property at such sale. He had repeatedly denied under oath that the state court receiver was ever in possession, his adverse claim to the property had several times been decided against him by different judges of the federal court, and on his own application a plenary suit was instituted to determine the title to the property, in which it was decided that the foreclosure sale was void. *Held*, that, possession of the property having been voluntarily surrendered to the receiver in bankruptcy, the bankruptcy court, under the rule that, where a court of competent jurisdiction has taken property into its possession through its officers, such property is thereby withdrawn

from the jurisdiction of all other courts, and the court having possession has ancillary jurisdiction to hear and determine all questions respecting title, possession, or control of the property, would retain jurisdiction over the property, and comity did not require that the application of the state court receiver should be granted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. ☞211.]

In Equity. Bill for injunction by W. C. Wright, trustee, against W. H. Harris and others, with which was consolidated an application in a bankruptcy proceeding against the Luxury Fruit Company, by a receiver appointed by a state court, to have certain property turned over to him. Application by the receiver denied, and decree rendered for complainant in the suit.

Orville A. Park and Harry S. Strozier, both of Macon, Ga., for plaintiff and trustee.

John R. L. Smith, of Macon, Ga., and L. L. Brown and C. L. Shepard, both of Ft. Valley, Ga., for defendants and receiver.

SPEER, District Judge. This is a plenary suit, brought at the instance and on the petition of the defendant, W. H. Harris, against himself and W. R. Brown, by W. C. Wright, as trustee of the Luxury Fruit Company, bankrupt. The order directing suit to be brought was granted on the 23d of April, 1914, by Hon. Wm. B. Sheppard, sitting in this District. In other ways, and before different judges, Harris has intervened in the bankruptcy litigation and submitted himself to the jurisdiction of the court. He now, however, seeks to repudiate this proceeding, denies the jurisdiction of the court, and makes common cause with the receiver of a state court in an insolvency proceeding, contends that this court is without jurisdiction in equity to grant the relief on the bill filed at his instance, and, although he has again and again testified under oath that the property in controversy was never in the possession of that receiver, now insists that it should be delivered to him by the trustee in bankruptcy. The insolvency proceeding in the state court is what is termed in Georgia, a trader's bill. It can be brought by three creditors. Harris was one of the plaintiffs therein. This insolvency proceeding, provided by the state law, was of course suspended when the bankruptcy law became operative.

[1] The property in controversy is a valuable fruit farm in Houston county, Ga. It is the principal asset of the bankrupt, the Luxury Fruit Company, largely composed of residents or citizens of Tennessee, who are professors in Vanderbilt University, their relatives and friends. It is plain from the evidence that for five years prior to March 8, 1914, Harris was the tenant of the Fruit Company, and as such was in possession of its farm and orchards. His lease was to expire on the 8th day of March, 1914. At the time the lease was made the Fruit Company was indebted to Harris. The company executed its notes to him for the amount of the debt, and by the terms of the lease, and as a part of its consideration, and also by a contemporaneous contract, Harris agreed to carry the indebtedness of the company

for the full period of the lease. It was stipulated that the notes to be given to Harris should not be payable until the expiration of the lease contract, unless they should, at an earlier date, be paid by the rentals of the farm. In evidence of its indebtedness and in consideration of this double agreement, the Fruit Company made to Harris its promissory notes in the sum of $7,000. With the notes they gave a deed, under the statutes of Georgia, to secure debt, covering the orchard and farm. This deed was second in dignity to a certain other obligation, namely, a deed in favor of the Union Central Life Insurance Company to secure an indebtedness of $8,000. The notes were executed on or about the 15th day of March, 1910. In consideration of the notes and settlement of certain differences between the company and himself, Harris at the same time executed to the company a contract to renew or cause to be renewed the notes during the period of the lease contract. This, as stated, had the effect of stipulating that the company should not be required to pay the notes or any part of them until the expiration of the lease, to wit, March 8, 1914. He also stipulated that he would hold the company harmless against any liability whatsoever on account of the notes prior to March 8, 1914.

It appeared from the evidence that the fruit farm was at times exceedingly profitable. To illustrate: The receiver on this particular farm, for the past year, sold fruit to the amount of $10,000 net. Harris, in his testimony before the referee, states that in 1913 he sold the peach crop for $21,000. Nevertheless during the full term of the lease Harris paid the company no rent. Differences naturally arose. The company contended that the earnings of the farm had reduced the notes to about $2,000. Harris insisted that there was $4,700 still due. These differences were not adjusted, and notwithstanding his engagement to hold the notes, Harris deposited two of them, for $2,000 each, with the Citizens' Bank of Marshallville, Ga., as collateral security for a loan to him by that bank, and another for $1,000 he transferred in the same manner as collateral security to the First National Bank of Ft. Valley, Ga. It further appears that prior to the expiration of the lease, notwithstanding his contract to hold the company harmless from any liability on the notes, whether in his own hands or in the hands of any transferee, and before the notes, in view of his contract to carry them until the expiration of the lease, were due, Harris induced the Citizens' Bank of Marshallville and the First National Bank of Ft. Valley to allow him control of the notes. Under the power of sale given him by the company in the deed to secure debt, he had the farm advertised for sale. The advertisement was published in the Home Journal, a paper printed at Perry, Houston county, Ga. He gave no intimation of his purpose to sell the property, of which he was tenant, by this foreclosure of the debt which he had agreed to carry. The stockholders of the company, most of whom were engaged in their professorial work at Nashville, Tenn., had no knowledge of this proceeding. Their negotiations with Harris for a settlement of the differences were all the while being actively conducted by correspondence. In no letter that he wrote them or their counsel did he give the slightest notice that he was seeking to sell their property.

In the meanwhile, the stockholders had exerted themselves and raised a sufficient sum to pay their debt to Harris. This was over $5,000. They had remitted this amount to their counsel in Macon, Mr. Orville A. Park. Mr. Park, by letter and otherwise, notified Harris that he had the money to pay off the debt, and time and again urged him to come to Macon with his calculations and effect a settlement. In another communication, Mr. Park offered to go, if necessary, to Ft. Valley for that purpose. Harris made evasive replies, at no time notifying Mr. Park (who, although living in an adjoining county, was wholly unaware of the advertisement) of the proposed and now imminent sale of the land. All the while Harris was actually the tenant of the Luxury Fruit Company. On the 16th day of March the property was sold before the courthouse door. Harris induced the clerk of the court to make a bid of $10,000. He then raised the bid to $12,000, and the property was knocked off to him. Harris then, as appears from the evidence, sought one W. R. Brown, who testified that he was a money lender of Ft. Valley. Harris said to Brown, "I have bought you a farm to-day." "What farm?" said Brown. "The Luxury Fruit Farm," replied Harris. Brown ascertained the price, and said it was all right, and then agreed to resell it to Harris, at Harris' suggestion. He testified that, while he got a deed to the farm from the Citizens' Bank of Marshallville, he knew nothing about the transaction, was never in possession, and since then had never been on the farm. Brown holds Harris' note for money advanced to Harris to carry out the terms of the sale.

It is charged that this transaction was null and void, because this property was not advertised in accordance with the power of sale; because it was not sold pursuant to the advertisement; because it was fraudulently bought by Harris, after he was advised that the company stood ready and willing to pay whatever amount was due; and that, while negotiations were pending for the settlement of all differences, Harris fraudulently concealed his purpose to sell, and induced the company to believe that he was preparing in good faith to adjust the accounts and settle the amount due. It is further charged, that Harris has continually, since the appointment of the plaintiff, both as receiver and as trustee, disturbed and disorganized the labor of the place, and interfered with the servants, and in divers other ways sought to impede and interfere with the receiver and trustee, and with the property in his possession. The prayers of the bill are that such interference be enjoined; that the deed executed by the Citizens' Bank of Marshallville under the fraudulent sale of Harris to W. R. Brown, conveying the Luxury Fruit Farm, and that the bond for title from W. R. Brown to Harris, wherein W. R. Brown obligates himself to convey the property to Harris, may be surrendered up and canceled as clouds on the title to the property; that an accounting may be had with Harris, and the amount due, if any, ascertained.

The answer of the defendants, while setting up various matters of difference and bickering between Harris and the officers of the Luxury Fruit Company, in no sense can be considered as defensive to the grave

charges presented by the bill. The controlling equity depends upon the inquiry:

"Did the sale under the power in the security deed executed to Harris by the Fruit Company deprive the latter, now bankrupt, of its title?"

It should be borne in mind that, by virtue of his lease and two other written contracts with the Luxury Fruit Company, Harris was obliged to renew and carry the notes and protect the property until the expiration of his lease, to wit, March 8, 1914. So far from doing this, he approached the Citizens' Bank of Marshallville, where he had placed these notes as collateral security for a loan to him, and procured such action on the part of the bank as brought about the sale. He told the bank that he deemed it necessary to foreclose the security. He himself prepared the advertisement. An attorney was employed ostensibly for the bank, but Harris made the employment and became responsible for the expense. He arranged with the sheriff for the conduct of the sale. He approached Mr. Hardison, the clerk, who had no interest in the matter, and induced him to make a bid of $10,000 to create the appearance of genuine bidding. At the same time he assured Hardison that he would raise his bid, and did so. He wrote the announcement publicly read at the sale. All the while he was in correspondence with Dr. Hollingshead, the treasurer of the defendant company; all the while, in communication with Mr. Park, by whom he had been notified the money was on hand to pay his notes. He was in frequent communication with Mr. Vaughn, who was on the ground to take charge of the property at the expiration of the lease. To not one of these, in letter or conversation, did he make the slightest suggestion that he had procured the advertisement of the property, and that the sale was imminent. All the while he was in the possession as tenant, and under obligation to protect the title to his landlord's property.

The sale having been made, he prepared the deed to the bank at Marshallville, had it signed, secured the money from Brown, paid it to the bank, saw to the making of the deed to Brown, then, executing his note to Brown, he took bond for title from the latter, and since then has claimed the farm of his landlord, the Fruit Company, as his own. The sale by the sheriff was effected on March 16, 1914. Harris' lease had expired only 8 days earlier, and 17 days before the expiration of the lease he had begun his proceeding and had advertised to foreclose and sell the equity he was under such explicit and reiterated obligation to protect. Fortunate indeed for the prevention or redress of such wrong, is the rule of construction of such powers. This is expressed in Code of Georgia, § 4620:

"Power of sale in deeds of trust, mortgages, and other instruments, is to be strictly construed and must be fairly exercised."

In no particular does it appear that this sale was conducted in compliance with this rule. This power recited that the sale was to be advertised once a week for four weeks prior to the date of sale. The first advertisement was published February 19th. The sale took place on March 16th. Since both the first and last day cannot be counted,

this was only 25 days. See Boyd v. McFarlin, 58 Ga. 208; Bentley v. Shingler, 111 Ga. 780, 36 S. E. 935; Wilson v. Northwestern Mut. Life Ins. Co., 65 Fed. 38, 12 C. C. A. 505; Earley v. Doe, 16 How. 610, 14 L. Ed. 1079.

[2] It is true that under section 6063 of the Code it. is provided that:

"In all cases where the law of force in October, 1891, required citations, notices, or advertisements, by ordinaries, clerks, sheriffs, county bailiffs, administrators, executors, guardians, trustees, or others to be published in a newspaper for thirty days, or for four weeks, or once a week for four weeks, it shall be sufficient and legal to publish the same once a week for four weeks (that is, one insertion each week for each of the four weeks) immediately preceding the term or day when the order is to be granted or the sale is to take place."

This modification of previous law relates to the official persons named, and, under the rule of interpretation, ejusdem generis, to persons of like character. Officials, trustees, and such persons presumably can have no selfish interest to subserve. It is quite otherwise with a creditor holding such a power of sale. It is to protect the debtor from unfairness that the statutory rule of strict construction of such powers above cited is established. Indeed, it has been held in Georgia, it is true not by an appellate court, but by Judge Pendleton, of the superior court of Fulton county, that such a sale after 25 days' advertisement, under a power requiring advertisement once a week for 4 weeks, was illegal and passed no title. See Baggett v. Edwards, 126 Ga. 463, 55 S. E. 250. In this connection should be considered the general rule that a sale not in accordance with the power is void. Carrington v. Citizens' Bank, 140 Ga. 799, 80 S. E. 12; 27 Cyc. 1472; Chase v. Morse, 189 Mass. 559, 76 N. E. 143.

[3, 4] Again, the debt as between Harris and the Luxury Fruit Company was not due. The advertisement was therefore premature. It has been held that even publication on the day the debt falls due is premature, and the subsequent sale void. 27 Cyc. 1473. This disregard of the law and the rights of the debtor is fatal to the sale. Where there is no default, a mortgagee cannot sell under such power of sale, so as to pass title, even to a bona fide purchaser. Rogers v. Barnes, 169 Mass. 179, 47 N. E. 602, 38 L. R. A. 145; Chase v. Morse, supra; 27 Cyc. 1451.

Again, the sale as conducted did not conform to the advertisement. It was advertised that the sale would be made inferior to and subject to a prior deed to the Union Central Life Insurance Company. In other words, the public was notified that the sale was to be made subject to a first lien of a large amount. While the advertisement was not read at the sale, a paper prepared by Harris, who is an attorney at law, was read. The sale of the equity of redemption was advertised, and the fee simple to the farm and orchard was ostensibly sold. Such a departure from the advertisement in the sale must have misled the public and deterred bidders. 27 Cyc. 1481; Dearnaley v. Chase, 136 Mass. 288; Donohue v. Chase, 130 Mass. 137. And all of this was done with the full knowledge on the part of Harris that within less than one hour's ride there was in the hands of reputable counsel a

sum sufficient to pay in full every dollar of the indebtedness due on the notes and security deed, by means of which this valuable property was brought to the block. Nor should it be forgotten that Harris was during all this time in actual possession of the property as a tenant of the Luxury Fruit Company. He could not dispute his landlord's title, nor attorn to another while in possession. Code, §§ 3697-3698. For these reasons, I conclude that this sale, so far as Harris is concerned, is utterly void.

[5, 6] While not the perpetrator of the wrong, in contemplation of equity, all the interest that Brown acquired was taken by him cum onere. Harris told Brown he had bought him a farm, identified it, stated the price, and said he wanted to buy it back for himself. Brown asked him if there was to be a lawsuit about it. Harris answered in the negative, and Brown was satisfied with the transaction and let him have the money. In this transaction, Harris volunteered to act as the agent of Brown. Brown ratified the action. Notice, then, to Harris, was notice to Brown. Code Ga. 3599; Bryant v. Booze, 55 Ga. 438; 39 Cyc. 1751. In such a sale the purchaser must see that the terms of the power are complied with. Dwelle v. Blackshear, 115 Ga. 680, 42 S. E. 49. Certain it is that the sudden and unexpected communication from Harris to Brown ought to have awakened Brown's suspicions. In other words, it was sufficient to put him on inquiry, and Brown is chargeable, under the familiar rule, with all the facts of this astonishing transaction, which inquiry would have developed. If, however, Brown can in any sense be regarded as a bona fide purchaser without notice, he at once resold to Harris, and, since Harris is the perpetrator of the wrong on the Luxury Fruit Company, whatever Brown conveyed to him equitably vests in the party wronged. Harris owes Brown about $4,000. For this he holds Brown's bond for title, and the trustee, who represents the party wronged, if obliged to pay Brown the amount due him by Harris, will become entitled to all the interest Harris can claim by virtue of this circuitous sale. Bourquin v. Bourquin, 120 Ga. 115, 47 S. E. 639. It follows that, if the trustee pays Brown for Harris, Harris' claim against the Luxury Fruit Company must be reduced by that amount.

[7] There remain to be considered the contentions of Harris and the receiver of the state court that the latter, having had possession of the farm and orchard of the bankrupt, and having delivered possession to this court, is entitled to the custody of the property as against the trustee. I approach this question with profound respect and deference for the state court of general jurisdiction, and for the Supreme Court which has had some phases of the matter under review. The principles of comity control all the relations between state and the national courts. Comity is courtesy. This I think has marked the action of the officials of this court toward the honorable the courts of the state. If the state court ever had possession, which is stoutly denied, it was turned over to our receiver. On March 31, 1914, the referee in bankruptcy appointed W. C. Wright as receiver for the land in controversy. On the same day the attorney for the bankrupt, with all respect, presented to the judge of the superior court the order ap-

pointing the receiver of the bankruptcy court. Thereupon Hon. H. A. Mathews, judge of the superior court, sua sponte passed the order following:

"It appearing to the court that a voluntary petition in bankruptcy has been filed by the Luxury Fruit Company, and that upon this application W. C. Wright has been appointed receiver by the bankruptcy court of all the assets of the Luxury Fruit Company, including the Luxury fruit farm; and it further appearing that G. L. Dure was appointed receiver in the state court, under the insolvency trader's bill, both upon said bill and cross-bill filed, and that said bankruptcy court is entitled to have the assets of the said Luxury Fruit Company: It is ordered by the court that the said G. L. Dure, receiver appointed by the state court, turn over and deliver all the assets of the Luxury Fruit Company, including said Luxury farm, to W. C. Wright, receiver of the bankruptcy court, and that G. L. Dure, receiver, for his expenses and fees, make application to the said bankruptcy court. This order is passed without prejudice to any of the parties. This March 31st, 1914."

The receiver pursuant to this order acquired the property. He was subsequently elected trustee, and is the plaintiff here. He has carried on the business of the Luxury Fruit Company for more than a year. He found it denuded of live stock, fertilizer, farm implements, apparatus of all sorts, and in a deplorable condition. He was, by the court, authorized to issue receiver's certificates, buy mules and necessary supplies, and operate the property. The record shows that under his management the farm has produced about $10,000 in cash. The receiver's certificates are paid off. The management has been admirable. There is another crop growing on this valuable property, and this is its most critical period. Now the trees should be sprayed, and all other precautions taken to conserve the great values, which might at this time be jeopardized by neglect or change of management. It is true, however, that the Supreme Court of the state has reversed the order of Judge Mathews. This presents a regrettable difference between the state courts on the question of comity or judicial courtesy, but cannot alter the fact that the property was actually and voluntarily surrendered to our receiver by the state court of original jurisdiction. True, Judge Mathews, in obedience to the Supreme Court, has directed the receiver appointed by him to apply for the possession of the farm, if in accordance with justice and equity as they may appear to this court. That application has been consolidated with the plenary suit which we have been considering.

The application is really made in the interest of Harris, and yet he denies, and has denied under oath again and again, that the state court receiver was ever in possession. He claims adversely to the Luxury Fruit Company, and to order the property restored to Dure would, it seems, be to leave Harris in possession as an adverse claimant. While this is true, his contention as such claimant has been, in this court, other judges presiding, decided against him again and again. This was done by the referee on the petition of Brown, who based his claim on Harris' alleged possession. It was done again, by Judge Sheppard, on a rule for contempt brought by the trustee against Harris; again, by the same judge, on a petition filed by Harris for a modification of the order on the rule for contempt; again, by Judge Grubb, on the petition of the First National Bank of Ft. Valley, joined in by

Harris, to vacate adjudication and set aside the election of the trustee: again, by Judge Sheppard, the petition of Harris for an injunction to prevent the receiver from interfering with his property; and again, by Judge Sheppard, on his petition that the property be restored to him as adverse claimant in possession. None of the orders of the judges passing on this question were reviewed in any way. Now it is settled that, where an adverse claimant seeks to recover property in the bankruptcy court, he consents to the jurisdiction. Le Master v. Spencer, 203 Fed. 210, 121 C. C. A. 416. When jurisdiction has been once obtained, the court should go forward, and do complete justice, and avoid further litigation. In re Blake, 150 Fed. 279, 80 C. C. A. 167.

Not only is this true, but Harris actually, as stated in the outset, applied to the court to bring the plenary suit, for the purpose of determining the title to the property. On this application, the order to that effect of Judge Sheppard was passed. True enough, he subsequently filed a motion to dismiss the bill, and questioned the jurisdiction of the court; but this was decided against him by Judge Grubb. Thus rightfully the court has jurisdiction over the property. Thus rightfully it has jurisdiction over Harris. With equal right it has jurisdiction over Brown. Here surely, if that power can ever be justified, the national court must exercise its independent judgment. This is done with profound respect to the state tribunals. By the loftiest authorities it has been held that, where the property in dispute is in the actual possession of the court of bankruptcy, there comes into play another principle, not peculiar to courts of bankruptcy, but applicable to all courts, federal or state. Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting title, possession, or control of the property. The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts. Murphy v. Hofman, 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; Whitney v. Wenman, 198 U. S. 553, 25 Sup. Ct. 778, 49 L. Ed. 1157.

It goes without saying that the bankruptcy court is primarily charged with the duty of administering the assets of the bankrupt. It is equally true that insolvency proceedings authorized by state law are suspended when Congress has adopted bankruptcy legislation. The labor and responsibility of conserving this property and passing upon its title was left to this court by the action of the state court. There is a large sum in bank, which the officer of this court has earned. The bank is under a heavy bond; the trustee, also. Dure, the receiver of the state court, is undeniably the ally of Harris. The proceeding under which Dure was appointed was brought by Harris, to further embarrass the stockholders of the Luxury Fruit Company, whose venture he had already ruined. That proceeding is in a state of legal paralysis. To turn over the large values in the hands of the trustee, the money

and lands, would be, under the circumstances, to superadd to the ruin of the bankrupt company the ruin of its creditors also.

A decree will be ordered directing that the application of Dure, receiver, be denied; that Harris be enjoined from interfering in any manner with the property in controversy, in the possession of the plaintiff as trustee, and from interfering with him in the discharge of his duties as such; that the deed from the Citizens' Bank of Marshallville to W. R. Brown on the 16th of March, 1914, conveying the Luxury fruit farm, and the bond for title from W. R. Brown to W. H. Harris, wherein Brown undertakes to convey the farm to Harris, be surrendered up and canceled, as clouds upon the title of the bankrupt company, and of plaintiff as trustee; that the record be referred to the master, so that an accounting may be ordered with the said W. H. Harris, and the amount due him, if anything, shall be ascertained, and accorded its proper priority of payment in the distribution of the assets of the Luxury Fruit Company, bankrupt; and that Harris and Brown pay the costs of this proceeding.