BLANCHARD & CALHOUN REALTY COMPANY *v.*
FOGEL; *et vice versa.*

Nos. 17370, 17379. FEBRUARY 13, 1951.

*Cumming, Nixon & Eve,* for plaintiff in error.

*Heard Robertson* and *Eugene T. Gilbert,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) Counsel for both parties agree that the sole question presented is whether the trial court was correct in holding that, under the provisions of the note and deed, the September installment would not have been in default until October 1, 1950.

It is further agreed by counsel that, since in both the note and the security deed the other instrument is referred to and identified, they together constitute but one contract and must be construed together. *Cartledge* v. *Trust Co. of Columbus,* 186 *Ga.* 718, 724 (198 S. E. 741) ; *Wardlaw* v. *Woodruff,* 175 *Ga.* 515 (12) (165 S. E. 557) ; 36 Am. Jur. 748, § 123.

It is thus apparent that whether or not a default has occurred —such default being necessary for an acceleration of the maturity of the indebtedness and for a valid exercise of the power

of sale contained in the security deed—will depend upon the meaning and definition of the word "deficiency". Counsel for neither of the parties has cited any Georgia decision or the decision of any other court, and we have been unable to find any, construing the word "deficiency" as used in the deed and note here under consideration, so that in determining its proper definition, and the intention of the parties in its use, we must depend upon the applicable rules of construction and upon such help as may be found in the standard. dictionaries.

It must be borne in mind that "The cardinal rule of construction is to ascertain the intention of the parties" (Code, § 20-702) ; that "Words generally bear their usual and common signification" (§ 20-704 (2)) ; and that "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." § 20-704 (4).

The word "deficiency" is defined in Webster's New International Dictionary (2d ed., Unabridged), as follows: "Deficiency: . . 1. State or quality of being deficient; inadequacy; defect. 2. A shortage; deficit. . . Syn. lack, want, dearth, insufficiency."

In Webster's Universal Unabridged Dictionary (1937), it is stated that the word "deficiency" is derived from the Latin word "deficiens", which in turn is the present-participle form of the verb "deficere", meaning to lack or to fail.

The New Century Dictionary (1930) defines the word as "state or fact of being deficient; incompleteness; imperfection, or defect; insufficiency; absence or want; that in which anything is deficient; especially, insufficiency or lack of funds for meeting money demands; the amount lacked; a deficit."

Construing the provisions of the note and deed quoted in the statement of facts, it is obvious that the word "deficiency" as there used does not apply merely to the payments in excess of the monthly installments upon the·principal indebtedness and the interest thereon. The note, which is expressly incorporated into the security deed, makes no mention of the additional payments for ground rents, insurance, and assessments. It provides only for installment payments upon the principal and interest on the indebtedness specified in the note; and the acceleration

clause contained in the note must necessarily relate to a deficiency in the installment payments on principal and interest only. That this is the meaning intended is emphasized by the covenant appearing in the security deed, which provides that the grantor will pay the principal indebtedness. and interest thereon at times and in the manner *provided in the note;* that any deficiency in said payments must be made good before the due date of the next payment, or default will occur. Thereafter, in the security deed, provision is made for the payment of ground rents, taxes, and assessments, such payments to be made monthly along with and in addition to the installments due monthly for the principal and interest. Provision is also made in the deed that, if any deficiency in the total or aggregate monthly installments including these additional payments for ground rents, taxes, and assessments, is not made good prior to the date of the next such installment, this, too, will constitute a default under the security deed.

It would thus seem plain that the true intent of the parties to the contract as expressed by the language used in both the note and the deed, is that, not only must any deficiency in payment of the installment on the note be made good before the due date of the next payment, but also any deficiency in amounts due for ground rents, taxes, insurance, and assessments must be paid in like manner. Such provision applies equally to each type of payment, and is not exclusively applicable to the additional payment of ground rents, taxes, insurance, and assessments.

Applying the definitions above quoted, it is clear that the word "deficiency", in its common and ordinary uses, and as used in these instruments, denotes not only the difference between the whole and any part, however small, but also the difference between the whole and nothing; that is to say, a complete and total absence, lack, or want of the whole.

To sustain the contention of the defendant that the word "deficiency" should be construed to mean the lack of a part only—the difference between the whole, however large, and any part thereof, however small, would have enabled the plaintiff, by paying a very small part, even five cents, upon any monthly installment, thereby to secure a grace period of one month in

which to pay the balance of the installment, however large such balance might be, when he would be deprived of any such grace period if the deficiency consisted of the whole amount of the monthly payment. This would lead to an absurdity, and a contract should not be so construed as to bring about such a result. Reno Club v. Young Investment Co., 64 Nev. 312 (182 Pac. 2d, 1011, 173 A. L. R. 1145 (8)); 17 C. J. S. 739, 741, § 319.

In 3 Words and Phrases 572, we find: " 'Any deficiency', as used in a bond in which defendants guaranteed the payment of an amount secured by a mortgage or any deficiency, covered the whole amount due on the mortgage, where the mortgaged premises were sold under foreclosure to satisfy a prior mortgage. Crouse v. Owens, 3 N.Y.S. 863, 864, 49 Hun, 610."

That it was contemplated by the parties that there would likely be delays in payments of monthly installments, which would not operate as a default under the provisions of the deed, and authorize an acceleration of the maturity of the debt and the exercise of the power of sale thereunder, is further evidenced by the provision in the deed, that "The Grantee may collect a 'late charge' not to exceed an amount equal to four per centum (4%) of any installment which is not paid within fifteen (15) days of the due date thereof to cover the extra expense involved in handling delinquent payments."

Construing the note and the deed as a whole, we reach the conclusion that it was the intention of the parties that a one-month grace period was granted the plaintiff in which to make payment of any deficiency in any monthly installment, whether principal, interest, ground rents, taxes, insurance, or assessments, and irrespective of whether the "deficiency" be in whole or in part of such monthly installment, and that, unless such deficiency remained unpaid until the due date of the next installment, there was no default. In 59 C. J. S. 792, § 495 (5), it is stated: "An election to accelerate the maturity of the debt secured by a mortgage or deed of trust may not be made prior to default, or, where a grace period is provided, before the expiration of such period." It was also held in Wright v. Harris, 221 Fed. 736, affirmed in Dure v. Wright, 228 Fed. 1021 (142 C.C.A. 654), certiorari denied, 241 U. S. 658 (36 Sup. Ct. 287, 60 L. ed. 1225),

that a mortgagee cannot sell under a power of sale, so as to pass title even to a bona fide purchaser, where there is no default.

The trial court properly granted the injunction and its judgment is affirmed.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. All the Justices concur.*