In re JOHN S. GARCHINSKY, INC., Bankrupt.

Eugene C. DiCERBO as Substitute Trustee of the Estate of John S. Garchinsky, Inc., Plaintiff,

v.

STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION and American Insurance Company, Defendants.

Bankruptcy No. 78–1238EG.

United States Bankruptcy Court, E. D. Pennsylvania.

Aug. 3, 1982.

James T. Owens, Owens, D'Ambrosio & Nescio, West Chester, Pa., for plaintiff, Eugene C. DiCerbo as Substitute Trustee of the Estate of John S. Garchinsky.

Donald M. Collins, Paul J. Donnelly, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants, State of New Jersey and American Ins. Co.

Leon S. Forman, Wexler, Weisman, Forman & Shapiro, Philadelphia, Pa., for debtor, John S. Garchinsky, Inc.

### OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we have jurisdiction under the Bankruptcy Act to determine the bankrupt's complaint against its surety and the State of New Jersey for a turnover of certain checks or funds which were allegedly due the bankrupt as of the date it filed its petition in bankruptcy. We conclude that we do not have jurisdiction over the instant complaint (1) because the property in question was not in the actual or constructive possession of the bankrupt on the date of the filing of its petition and (2) because the defendants did not consent to our jurisdiction.

The facts of the instant case are as follows:[1] On August 23, 1978, John S. Garchinsky, Inc. ("the bankrupt") filed a voluntary petition in bankruptcy under the Bankruptcy Act ("the Act").[2] Prior to that time, the bankrupt had been engaged in the business of installing traffic signals, lighting and intersection improvements for, among others, the State of New Jersey, Department of Transportation ("New Jersey"). In July of 1978, the bankrupt had, pursuant to one of its contracts with New Jersey, presented a request for payment for work which it had completed and for materials which it had supplied on that job prior to that time. In early August, New Jersey processed that request and prepared two checks dated August 17, 1978, payable to the bankrupt and totaling $28,545.13. However, New Jersey put a hold on those checks and they were never issued.[3] Ultimately, New Jersey cancelled those checks and issued new checks in the same amounts to the American Insurance Company ("American") which was the surety of the bankrupt on the contract with New Jersey and which was obliged to complete that contract after the bankrupt filed its petition.

Upon learning of the existence of the two checks dated August 17, 1978, the substitute trustee of the bankrupt's estate[4] filed the instant complaint against New Jersey and American seeking a turnover of those checks or the funds represented by them. Both American and New Jersey have objected to the jurisdiction of this court to hear that complaint. We conclude that that objection is well founded.

Under the Bankruptcy Act, the bankruptcy court had jurisdiction to adjudicate summarily all rights and claims pertaining to controversies concerning property in the actual or constructive possession of the bankruptcy court.[5] However, where a controversy was one involving property in the actual or constructive possession of a third person asserting a *bona fide* adverse claim thereto, then the bankruptcy court had no jurisdiction over that controversy absent the consent of the adverse claimant.[6]

In the instant case, the substitute trustee asserts that although the property in controversy (i.e., the checks or the funds represented by those checks) was in the possession of a third party, New Jersey, as of the date of the filing of the bankruptcy petition, New Jersey had no *bona fide* claim to that property. However, American and New Jersey argue that New Jersey did have a *bona fide* claim to that property under the holding of *National Shawmut Bank of Boston v. New Amsterdam Cas. Co., Inc.*, 411 F.2d 843 (1st Cir. 1969), aff'g, 290 F.Supp. 644 (D.Mass.1968). In that case the United States Court of Appeals for the First Circuit held that progress payments which were earned by a contractor but not paid prior to default belonged to the government (and thus to the surety who was subrogated to the government's rights).[7] The substitute trustee contends, nevertheless, that the instant case is not governed by the holding in the *Shawmut* case because, he asserts, the funds in ques-

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Although the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, § 403, 92 Stat. 2683 (1978).

3. Specifically, the New Jersey Department of Transportation processed the request for payment and authorized the Department of the Treasury to prepare the checks. However, the Department of Transportation also notified the Department of the Treasury that the checks were not to be sent to the bankrupt but were to be sent to the Department of Transportation to be held pending a determination of whether the name of the payee was to be changed, apparently on the request of the bankrupt.

4. The substitute trustee is Eugene C. DiCerbo.

5. *See* 2 Collier on Bankruptcy ¶ 23.04[2] at 453 n. 11 (14th ed. 1976) and cases cited therein.

6. *Id.* at ¶ 23.04[2] and ¶ 23.08 and cases cited therein.

7. 411 F.2d at 848.

tion *were* paid to the bankrupt prior to any default. We disagree. Assuming that the checks were prepared before any default was declared, as the substitute trustee argues,[8] we find that the funds were nonetheless never paid because those checks were never delivered to the bankrupt. As a result, we conclude that New Jersey had a *bona fide* claim to the checks which it held on the date of the bankrupt's filing[9] and, consequently, that we lack jurisdiction to decide the rights of the parties to that property absent their consent to our jurisdiction.

It is well settled that in all cases where a party is entitled to the determination of his rights in a plenary action, he may nevertheless consent to the exercise of summary jurisdiction by the bankruptcy court and in that manner have his rights adjudicated.

. . . .

Consent, as hereafter demonstrated, may be (1) express; (2) by waiver through failure to raise the proper objection, or (3) implied from any act indicating a willingness on the part of the party that his claim or interest be determined summarily by the bankruptcy court.[10]

In the instant case, however, we conclude that neither New Jersey nor American have consented to our exercising jurisdiction over the instant controversy. Neither have expressly consented to our jurisdiction nor have they failed to raise a proper objection to that jurisdiction. In fact, both promptly objected to our jurisdiction of this complaint. Finally, we conclude that there has been no act by either New Jersey or American indicating a willingness on their part to have their claim or interest in the property in question determined by the bankruptcy court. Although American did file a proof of claim in the bankruptcy proceedings, we conclude that it did not thereby consent to our jurisdiction over the instant controversy. Some courts have held that by filing a proof of claim a creditor consents to the jurisdiction of the bankruptcy court to determine the amount and validity of that claim as well as any defenses raised in opposition to that claim.[11] However, in *In re Industrial Associates, Inc.,*[12] the United States District Court for the Eastern District of Pennsylvania held that where the creditor clearly objects to the summary jurisdiction of the bankruptcy court over a claim made by the trustee against the creditor, the creditor could file its proof of claim against the bankrupt without submitting to the court's jurisdiction. Consequently, we conclude that American has not consented to our exercising jurisdiction over the instant complaint because notwithstanding the fact that it filed a proof of claim in the bankruptcy proceedings, it has clearly objected to our jurisdiction over this complaint.

Based on all of the above, we will dismiss the instant complaint for lack of jurisdiction.

---

**8.** The substitute trustee contends that there was no default until New Jersey notified the bankrupt of such on September 1, 1978, while the checks were prepared on August 17, 1978. New Jersey and American assert, on the other hand, that the default occurred in early August, 1978. Because we conclude that we lack jurisdiction even if the facts are as the substitute trustee asserts, we find it unnecessary to resolve this factual issue.

**9.** It is unnecessary to determine whether New Jersey would prevail on the merits of its claims, it is only necessary to determine whether that claim is more than merely a colorable claim of an interest in that property. *See* 2 Collier on Bankruptcy ¶ 23.06[1] at 500 (14th ed. 1976).

**10.** *Id.* at ¶ 23.08[1] at 532 and 536 (footnotes omitted).

**11.** *See, generally*, 2 Collier on Bankruptcy ¶ 23.08[6] at 552–60 (14th ed. 1976) and cases cited therein.

**12.** 155 F.Supp. 866 (E.D.Pa.1957).